IN RE AL-HAROON B. HUSAIN,     )
     )
     Respondent-Appellant,     )     No. 17 C 06971
     )
     v.     )
     )     Judge Edmond E. Chang
PATRICK S. LAYNG, U.S. Trustee,     )
     )
     Appellee.     )

## MEMORANDUM OPINION AND ORDER

Al-Haroon Husain was disbarred and held in contempt by the bankruptcy court. The Seventh Circuit affirmed the disbarment. *In the Matter of: Al-Haroon B. Husain,* 866 F.3d 832, 834 (7th Cir. 2017). This is Husain's separate appeal challenging the finding of contempt.[1] He contends that the bankruptcy court's findings were clearly erroneous and that the contempt should be vacated. R. 15, Appellant Br. at 10.[2] For the reasons discussed in this Opinion, the contempt order is affirmed.

## I. Background

Before his disbarment, Al-Haroon Husain was an attorney representing Chapter 7 debtors in the Bankruptcy Court of the Northern District of Illinois.

---

[1]This Court has appellate jurisdiction over this case under 28 U.S.C. § 158(a), and the notice of appeal was timely filed within 14 days of the entry of the appealed order, Fed. R. Bankr. P. 8002(a)(1); *In re Sobczak-Slomczewski,* 826 F.3d 429, 432 (7th Cir. 2016) (deadline for filing notices of appeal from bankruptcy decisions is a jurisdictional requirement).

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Disciplinary Order, Trustee Appx. at 22.[3] After the United States Trustee uncovered several instances of alleged misconduct in Husain's bankruptcy cases, the bankruptcy court instituted disciplinary proceedings against him. *See* Bankr. Discipline Record at 1135; Bankr. Docket, Trustee Appx. at 2.[4] After an evidentiary hearing on the alleged misconduct, the bankruptcy court found that Husain engaged in misconduct by, among other things, signing clients' names to under-perjury declarations (without saying that he was doing so); copying and reusing clients' signatures so that it looked like they had signed documents that they had not read; and submitting documents that omitted important assets of clients. Disciplinary Order, Trustee Appx. at 18; *In the Matter of: Husain*, 866 F.3d 832, 834-35 (7th Cir. 2017). As a result, the bankruptcy court "permanently suspended" (that is, disbarred) Husain from practicing before the Bankruptcy Court for the Northern District of Illinois. *Id.*; *In re Husain*, 533 B.R. 658, 698 (Bankr. N.D. Ill. 2015). In later orders, the bankruptcy court ordered Husain to pay restitution to an array of former clients and to pay costs to the United States Trustee for the costs of prosecuting the disciplinary proceeding. Restitution Order, Husain Appx. at 1304; Costs Order, Trustee Appx. at 73. In total, Husain was ordered to pay $28,100 in restitution to 18 clients and $16,809.21 in prosecution costs. Disciplinary Order, Trustee Appx. at 60; Costs Order, Trustee Appx. at 73; Motion to Show Cause, Trustee Appx. at 70.

---

[3]The Trustee's appendix on appeal can be found at R. 17-1. The record on appeal is at R. 11. Husain's primary appendix is at R. 15-1; it is not paginated, so the citations to it refer to the "PageID" pagination in the electronically filed documents (with the exception of the hearing transcript).

[4]For a fuller recitation of the underlying violations leading to Husain's disciplinary proceedings, *see In re Husain*, 533 B.R. 658 (Bankr. N.D. Ill. 2015).

The restitution-payment deadline was set for August 28, 2015, and the Trustee costs were due by September 24, 2015. *See* Motion to Combine, Trustee Appx. at 63. On August 31, 2015 (three days after the restitution payment was due), Husain filed a motion in the bankruptcy court, arguing—for the first time—that he was unable to afford the restitution payment. Motion to Combine, Trustee Appx. at 63. Accompanying the motion was an affidavit executed by Husain, and in turn, the affidavit attached a document that bore a title of "Personal Financial Statement." Trustee Appx. at 65-67. The financial statement asserted that Husain had only $2775 in assets and an underwater net worth of negative $37,225. *Id.* at 66.[5] The Trustee fired back with a motion seeking the issuance of a show-cause order against Husain as to why he should not be held in contempt. Motion to Show Cause, Trustee Appx. at 70.

In an order signed on September 1, 2015, the bankruptcy court memorialized Husain's obligation to pay $16,809.21 to the Trustee for the costs of prosecution. Costs Order, Trustee Appx. at 73. In early October 2015, the bankruptcy court ordered Husain to show cause why he should not be held in contempt of court for "failing to comply with the July 29, 2015, Restitution Order and the September 1, 2015, Order Awarding Costs." Show Cause Order, Trustee Appx. at 75. That hearing was set for December 1, 2015. *Id.*

On the day of the hearing, Husain and his counsel moved to strike the contempt hearing, because they had brought the full payment. Husain Appx., Hrg.

---

[5]The financial statement stated that Husain had no real property assets, yet it also stated that he owed $326,000 on a mortgage. Motion to Combine, Trustee Appx. at 66-67.

Tr. 2:12-16. But there were two problems. First, Husain had brought a single check for the full amount, even though there were separate sets of payees (the individual clients and the United States Trustee). *Id.* 5:1-4. Second, the Trustee also wanted to elicit testimony on where the funds came from to ensure that Husain properly obtained the money comprising the payments (instead of, for example, by misappropriating client funds). *Id.* 8:14-19; 14:19-23. The bankruptcy court recessed so that Husain could correctly split the checks for the restitution payments, and then the proceeding resumed later that day. *Id.* 10:4-13. At that hearing, attorneys for the Trustee questioned Husain, who testified that he obtained the funds through his wife and father-in-law and denied that the money came from any client trust accounts. *Id.* 18:19-23; *id.* 21:2-12. After the examination, the Trustee asked the bankruptcy court to hold Husain in contempt for failing to make the payments on time, but at the same time the Trustee took the position that the contempt could be purged with the payment made that day. *Id.* 25:3-15. The Trustee also asked that the bankruptcy court order Husain to pay the Trustee's out-of-pockets costs for pursuing the contempt proceeding, which totaled $6,178.68. *Id.* 25:16-23. Husain (through his attorney) argued that he could not be held in contempt, because he could not afford to pay the restitution and costs when they had come due. *See e.g.*, *id.* 41:4-10. But the bankruptcy court found Husain's defense to be not credible and held him in contempt for missing the deadlines—though it did not order any further punishment, because he had brought the payment to the hearing. *Id.* 45:7-11; 46:6-8. Later, the bankruptcy court entered an order memorializing those findings, that is, holding Husain in

contempt, declining further punishment, and awarding the United States Trustee its attorney's fees and costs in prosecuting the contempt. Contempt Order, Husain Appx. at 1302.

The week after the bankruptcy court's rulings, Husain appealed both his disbarment and the contempt holding to the District Court for the Northern District of Illinois. *See* Bankr. Docket, Trustee Appx at 16-17; Executive Committee Order, Trustee Appx. at 76. The District Court assigned both appeals to the Executive Committee for the Northern District of Illinois, the five-judge panel which handles the District Court's disciplinary proceedings. 7th Circuit Opinion, Trustee Appx. at 79. The Executive Committee issued an order dismissing the contempt appeal due to a lack of jurisdiction. Executive Committee Order, Trustee Appx. at 76. From there, Husain appealed again. Bankr. Docket, Trustee Appx. at 16-17. The Seventh Circuit affirmed Husain's disbarment, but noted that the Executive Committee should have transferred the contempt appeal to a single district judge for review. 7th Circuit Opinion, Trustee Appx. at 79-81. So the Seventh Circuit remanded the contempt appeal for assignment and decision by a district judge. *Id.*; *see also* 28 U.S.C. § 158(a). The contempt appeal is now before this Court for decision.

## II. Standard of Review

District courts have jurisdiction to hear appeals from the final judgments and orders of the bankruptcy courts. 28 U.S.C. § 158(a).[6] When deciding an appeal from

---

[6]As these contempt proceedings arose from a disciplinary case, it is relevant to note that the bankruptcy court also had jurisdiction for those original disciplinary proceedings arising before it under 28 U.S.C. §§ 157(a)-(b) and 1334(a).

the bankruptcy court, the district court sits as an appellate court. *See id.*; *Matter of Neis,* 723 F.2d 584, 588 (7th Cir. 1983). On appeal, civil contempt findings are reviewed only for an abuse of discretion. *In re Taylor,* 793 F.3d 814, 818 (7th Cir. 2015). So the Court will only reverse a finding of civil contempt if it "depends on faulty legal premises [or] clearly erroneous factual findings." *Id.* (quoting *Harrell ex rel. N.L.R.B. v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 556 (7th Cir. 2013)). The district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). The clear-error standard of review means that the district court will not reverse a factual finding simply because it would have decided the issue differently; instead, a reviewing court must ask whether, considering all of the evidence, "it is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (cleaned up).[7]

### III. Analysis

### A. Mootness

Civil contempt acts as a vehicle to compel a party "to do what a court had previously ordered him to do." *Turner v. Rogers,* 564 U.S. 431, 441 (2011) (cleaned up). So before digging into the facts leading to Husain's civil contempt, the Court must address whether the case is moot, because Husain eventually did make the underlying payments. "Ordinarily[,] compliance with an order of civil contempt

---

[7]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

makes the order moot." *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 716 (7th Cir. 1987) (citing *Marshall v. Whittaker Corp.*, 610 F.2d 1141, 1145 (3d Cir. 1979)). That makes sense, because the purpose of civil contempt is to coerce compliance with an order, and once that is done—that is, once the contempt is purged—then there is no purpose to an appellate challenge against the contempt finding because "reversing the order would not benefit the party held in contempt." *Id.*

But when an order that is associated with the finding of contempt imposed some other obligation, then that separate order can be challenged on appeal, even when the contemnor has complied with the primary obligation of the order. *Szabo*, 819 F.2d at 716. In *Szabo,* a company was held in contempt, and as a result was ordered to, among other things, bargain with a particular union and to pay the National Labor Relations Board its attorney's fees and expenses incurred in prosecuting the contempt. *Id.* The company then complied with the order. The Seventh Circuit acknowledged the general rule that a contemnor who has complied with the underlying order no longer has anything at stake. *Id.* But *Szabo* held that, among other things, the order to pay attorney's fees and expenses remained a live dispute. *See id.* The same is true here. Although Husain has substantially complied with the underlying order that resulted in the contempt finding, he may challenge the award of fees and costs to the United States Trustee for prosecuting the contempt. Vacating or reversing the contempt finding would knock out that award. So the case is not moot and the Court can review the merits of the contempt finding.

**B. Contempt Finding**

7

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). A district court may enter an order of civil contempt if it "finds by clear and convincing evidence that a party has violated the express and unequivocal command of a court order." *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). Bankruptcy courts are also authorized to adjudicate civil contempt proceedings. Fed. R. Bankr. 9020; 11 U.S.C. § 105; *see Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 916-17 (7th Cir. 2001).

Here, it is obvious that Husain violated the bankruptcy court's orders to pay restitution to clients and costs to the Trustee by explicit deadlines. On July 29, 2015, the bankruptcy court ordered Husain to pay restitution to specified clients in specified amounts by the deadline of August 28, 2015. Restitution Order, Husain Appx. at 1304-05. On September 1, 2015, the bankruptcy court also ordered Husain to pay the Trustee for the "out-of-pocket costs incurred in the prosecution" of the disciplinary proceeding by September 25, 2015. Costs Order, Trustee Appx. at 73. The August 28 date came and went without a payment or explanatory filing by Husain. *See* Bankr. Docket, Trustee Appx. at 11. Instead, on September 1, 2015, Husain filed a motion asking that the bankruptcy court "combine" the payment obligations so that he could attempt to purchase one bond, instead of two separate ones. Motion to Combine, Trustee Appx. at 63. In that motion, Husain contended that he did not have the money to make the August 28 restitution payments. *Id.* That was the very first time

that Husain raised a problem with his ability to pay the restitution obligation. But by that point, Husain was already three days late in paying the restitution. That is a crystal clear violation of the order to pay restitution by August 28, 2015. Then the September 25, 2015 deadline came and went, and no payment was made to the Trustee for costs. It was not until December 1, 2015—the date of the contempt hearing—that Husain finally paid the obligations. So there is clear and convincing evidence that Husain violated the unequivocal orders of the bankruptcy court to make the restitution and the costs payments by the specified deadlines.

Ordinarily, that would be enough to support the bankruptcy court's civil contempt finding. But a court may not "impose punishment 'in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.'" *Turner,* 564 U.S. at 442 (quoting *Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988)). An inability to pay is a "valid defense" in a contempt proceeding—importantly, however, the "party raising the defense has the burden of proving its inability to pay." *Resource Tech.,* 624 F.3d at 387 (citing *United States v. Rylander,* 460 U.S. 752, 757 (1983)). So the contemnor must offer "an adequate factual basis to support the defense." *Id.* (citing *S. Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 855 (7th Cir. 1999)). And importantly here, where a party has made "no effort at even partial compliance" with a court order, the viability of the defense "requires a showing of a complete inability to pay"—that is to say, the contemnor has the burden of establishing "clearly, plainly, and unmistakably, that compliance is

impossible." *Id.* (quoting *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir. 1995)) (cleaned up).

It is true that *Rylander*, the case cited by *Resource Technology*, at one point uses the term "burden of production" to describe the contemnor's burden to show that compliance with an order is impossible. 460 U.S. at 756. In this case, however, it does not matter whether Husain only had a burden of production (that is, the burden to offer enough evidence for a reasonable factfinder to find in the offering-party's favor) or whether he instead had the ultimate burden of persuasion, because the thin evidence that he offered (as detailed below) did not even meet a burden of production. Indeed, because Husain made no attempt to even partially comply with the payment orders (for example, by making a partial payment), Husain had to offer evidence that he was *completely* unable to pay any part of the balance. *Resource Tech.,* 624 F.3d at 387. That he did not do.

To start, in the August 31 motion (filed three days *after* the restitution deadline), Husain only presented a 1-page affidavit that essentially did nothing more than attach a financial statement that he swore was accurate. Husain Aff., Trustee Appx. at 65. The "financial statement" listed cash on hand of $25 in a checking account and $250 in a savings account. *Id.* at 66. Yet there were no bank records attached to the financial statement to back up that assertion. Husain listed a life insurance policy with a $2,000 cash-surrender value. *Id.* Again, no records accompanied the motion to back that up. There was no detail on whether Husain was

paying monthly premiums on the life insurance policy.[8] Aside from another $500 in personal property, for a total of $2,775 in assets, no other assets of any value were listed on the financial statement. *Id.* Husain reported his ownership interest in his law practice, Himont Law Group, but left blank the entry for its market value. *Id.* at 67. But did the law firm have no assets? Were there no receivables?[9]

What's more, the listing of liabilities raised questions too. Husain reported a Bank of America mortgage of $326,000, yet did not disclose any real estate assets. Husain Aff., Trustee Appx. at 66-67. And what about the equity in the real estate? The liability disclosure stated that the mortgage's original principal was $425,000, but no equity in real estate was disclosed. *Id.* at 66-67. Perhaps the property was under water, but the 1-page affidavit and 2-page financial statement provided no evidence on that. Also, Husain asserted that the mortgage's monthly payment was $1,728. *Id.* at 67. How had Husain been paying for that if his cash on hand was only $275? Perhaps someone else (like a family member) was making the mortgage payments, but that is exactly the kind of actual evidence necessary to meet the burden of production (and would put the mortgage liability in a different light).

At the eventual contempt hearing, Husain offered nothing more that would help satisfy his burden of production (let alone a burden of persuasion) that he had a complete inability to pay. When Husain showed up with the funds to pay the overdue

---

[8]At the contempt hearing, the Trustee asserted, without contradiction from Husain, that the life insurance records showed that Husain was paying "several thousand dollars towards [the policy] every month." Hrg. Tr. 30:24-31:4.

[9]At the contempt hearing, even Husain's counsel stated that the law office was paying "paralegals and has other offices expenses." Hrg. Tr. 39:23-40:3.

obligations, the hearing did go sideways a bit, as the parties and the bankruptcy court discussed how best to proceed. Hrg. Tr. 4:2-8:25. The Trustee eventually moved into evidence a set of records, by agreement, in anticipation of rebutting Husain's argument that he had been unable to pay. *Id.* 9:8-13, 11:4-23. But the only *record* evidence that Husain presented at the hearing was solely focused on where he had obtained the funds for the check that he had showed up with. Specifically, Husain offered into evidence: (1) his testimony on the source of the funds he was using to pay the obligations, *id.* 18:1-24:11; (2) the most recent bank account statement for Husain's client trust account (again, to show that the funds did not come from clients), *id.* 22:8-23:3; and (3) the receipt for the cashier's check for the funds, *id.* 23:5-24:3. That is all. In fact, Husain did not actually testify on his ability to pay as of the deadlines. On that record, even if Husain only had a burden of production, rather than the burden of persuasion, he did not satisfy it.

In light of the failure to meet the burden of production, the Trustee did not actually have to offer rebuttal evidence. But it is worth noting that the Trustee did in fact introduce evidence, through the records of Husain's law office, that Husain had the ability to make at least a partial payment. Remember that the bankruptcy court allowed into evidence, with Husain's agreement, the Trustee's proffered exhibits. Hrg. Tr. 8:20-9:3, 11:4-12. One set of records, Exhibit 16, comprised bank account statements of Himont Law Group. *Id.* 37:3:11. The Trustee pointed out that the statements showed expenses being paid from the account to "entities such as Target, Jewel-Osco, Mariano's, Bank of America Home Mortgage" (the bank that held the

mortgage reported by Husain). *Id.* 37:18-22. Husain's wife had a debit card on the account. *Id.* 37:23-38:8. On August 28, 2015, the Himont account had a balance of $7,119.79. *Id.* So there was enough money in that account to make a partial payment. The only response by Husain's counsel on that account was to argue "that is a separate company. That is not Mr. Husain. That's his law office where he pays paralegals and has other office expenses." *Id.* 39:23-40:3. But Husain had (this could go without saying) an ownership interest in the law firm—he reported the interest on the earlier, 2-page financial statement. But he did not bother to put a value on the interest, Trustee Appx. at 67, nor explain why he did not. With the account balance of over $7,000 in the law firm account, there was persuasive evidence that Husain could have made a partial payment toward the court-ordered obligations.[10]

Against this record (or lack of it), Husain argues that the bankruptcy court "failed to show Appellant intentionally refused" to make the restitution payment. Appellant Br. at 4. That argument misses the mark. The bankruptcy court had no affirmative obligation to show, as Husain contends, "evidence that contradicted Appellant's testimony" or to show that Husain intentionally refused to pay. *Id.* As discussed above, without record evidence supporting Husain's bald assertion that he could not pay anything, not even a partial payment, Husain did not satisfy even a burden of production. So Husain's failure to pay by the deadlines (and, indeed, not

---

[10]During the contempt hearing, and in the briefing for this appeal, the parties battle over a $25,000 deposit that had been made into Husain's personal checking account, and then was transferred out on the same day. *See* Appellant Br. at 3-6; Appellee Br. at 20. In light of Husain's failure to meet his burden of production, there is no need to decide one way or the other whether the $25,000 was available to pay the obligations.

even raising the inability-to-pay argument until three days *after* the first deadline) gave the bankruptcy court a solid foundation to find Husain in contempt for missing the deadlines. The bankruptcy court did not abuse its discretion in holding Husain in contempt.

That is true even though Husain showed up with the funds to make the payments on the day of the contempt hearing. Despite Husain's day-of payment, up until that point, the Trustee had to dedicate attorney-time and costs to pursue the contempt against Husain. So the bankruptcy court was also within its authority to order Husain to pay the attorney's fees and costs that the Trustee incurred in litigating the contempt. *See In re Liou,* 503 B.R. 56, 78, 78 n.15 (Bankr. N.D. Ill. 2013) (citing Illinois Supreme Court Rule 773(b), authorizing costs incurred in prosecuting the discipline of attorneys); *see Matter of Establishment Inspection of Microcosm,* 951 F.2d 121, 126 (7th Cir. 1991) ("But we note that it is clearly valid to award attorney's fees and costs for preparing and prosecuting a contempt petition …"). On appeal, Husain has not devoted any argument to the *amount* of fees and costs, so he has waived any objection as to amount. *See Matter of Establishment Inspection of Microcosm,* 951 F.2d at 126. So with the affirmance of the contempt finding, the amount awarded in fees and costs is also affirmed.

## IV. Conclusion

The bankruptcy court did not abuse its discretion in holding Husain in contempt for failing to pay the restitution and Trustee costs by the court-set

deadlines. The contempt finding is affirmed, as is the award of fees and costs to pursue the contempt, specifically, $6,176.68 in fees and costs.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 13, 2018